# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES EARL JUDSON,

Defendant-Appellant.

UNPUBLISHED
October 9, 2018

No.  338789
Berrien Circuit Court
LC No.  2016-005134-FH

Before:  BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Defendant, James Earl Judson, appeals by right his convictions of assault by strangulation, MCL 750.84(1)(b), third-offense domestic violence, MCL 750.81(4), and witness bribery, intimidation, and interference, MCL 750.122(7)(a).  The trial court sentenced Judson as a fourth-offense habitual offender, MCL 769.12, to 140 to 480 months' imprisonment for the assault by strangulation conviction, 80 to 480 months for the domestic violence conviction, and a consecutive sentence of 60 to 180 months for the witness interference conviction.  We affirm.

## I. BACKGROUND

Judson went to visit the complainant, the mother of his son, and they started arguing. Judson punched the complainant in the mouth and choked her until she saw stars and gasped for breath.  After the prosecution brought charges against Judson and the trial court entered a no-contact order, Judson spoke with and met with the complainant.  At one of these encounters, Judson took the complainant's cell phone and texted a message to his cell phone that said she made up the allegations.  Judson later wrote a letter saying that the complainant lied and told the complainant to copy it verbatim and deliver it to the prosecutor.  The complainant copied the letter and had it notarized, but when she gave it to the prosecutor, she told the prosecutor that Judson told her to write it.  In addition to the complainant's testimony about these events, three women and several police officers testified about prior acts of domestic violence committed by Judson, pursuant to the prosecution's notices provided under MCL 768.27b and MCL 768.27c. The jury found Judson guilty of all three charged offenses.

## II. DISCUSSION

### A. EVIDENTIARY CHALLENGES

-1-

Judson raises several challenges to the evidence presented. He failed to preserve these claims of error by objecting in the trial court. We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

Judson raises several challenges to the introduction of other-acts evidence. "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." MCL 768.27b. Under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence of other acts of domestic violence is admissible to provide "a full and complete picture of a defendant's history" to show the likelihood that the charged offense was committed. *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011) (quotation marks and citation omitted).

MCL 768.27c permits the admission of hearsay evidence as substantive evidence of the offense of domestic violence. *People v Meissner*, 294 Mich App 438, 445-448; 812 NW2d 37 (2011). That hearsay evidence is admissible if all of the following descriptions apply:

(a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

(b) The action in which the evidence is offered under this section is an offense involving domestic violence.

(c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.

(d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer. [MCL 768.27c(1).]

In this case, the prosecution provided timely notice of its intention to introduce evidence under MCL 768.27b and MCL 768.27c. Those notices identified six other women who reported acts of domestic violence committed by Judson to the police between 2007 and 2015 and several police officers who responded to these reports. The prosecution also attached numerous police reports that reflected the domestic violence complaints. Judson did not object to theses notices. At trial, three women and nine police officers testified about prior acts of domestic violence. The first woman who testified admitted that she reported domestic violence to the police, but she testified that she added false accusations to those reports. Although the witness did not dispute the contents of the police reports, which stated that Judson punched her and choked her, the

-2-

witness denied that Judson had done anything more than slap her. The prosecution then called seven police officers to testify about what appear to be five separate incidents of domestic violence against the first witness. A second witness testified that she did not recall two incidents of domestic violence by Judson described in police reports. The prosecution then called two police officers to testify about the two incidents. A third witness, who admitted to a sexual relationship with Judson, testified that Judson once choked her and threatened to kill her. The prosecution also offered two judgments of sentence regarding two prior convictions. On appeal, Judson does not dispute that all of this testimony comports with the requirements of MCL 768.27c, nor does Judson dispute the trustworthiness of the statements made to the police officers. Instead, Judson first argues that the prosecution improperly called uncooperative witnesses for the purpose of impeaching them with the police officers' testimony and using that testimony as substantive evidence. Because the police officers' testimony conformed to the requirements of MCL 768.27c, their statements were admissible to prove relevant evidence, not solely for the purpose of impeaching other witnesses. Accordingly, the testimony of the police officers was not improperly introduced as substantive evidence.

Judson further contends that the prosecution improperly had the police officers use the police reports to refresh their memories and that they testified to the contents of those reports. A witness may refresh his or her recollection before and during testifying so that he or she may fully and accurately testify. MRE 612 and MRE 803(5). The adverse party is entitled to production of the document used to refresh the witness's recollection. MRE 613. Only the adverse party may offer that document into evidence. MRE 803(5). The prosecution provided Judson with the police reports before trial, and Judson had an opportunity to cross-examine the police officers. The police officers testified that they refreshed their recollections by reviewing their reports. The prosecution did not seek to admit the police reports into evidence. Therefore, Judson's contention that the police reports were improperly used lacks merit.

Judson also argues that the trial court erred by not instructing the jury that the witnesses' prior inconsistent statements could be used for impeachment purposes only. Rather, Judson maintains, the trial court instructed the jury that it could consider these statements as substantive evidence. Judson waived this issue by agreeing to the jury instructions. See *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004). Therefore, we need not consider this claim.

Next, Judson argues that trial counsel was ineffective for failing to object to the admission of the police officers' testimony, for failing to request the proper jury instruction, and for failing to object to the jury instruction given. To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is "not ineffective for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). In this case, defense counsel could not properly object to the other-acts evidence because it was properly admissible under MCL 768.27b and MCL 768.27c. Further, because the testimony of the three women and the police officers was admissible under MCL 768.27c, the inconsistent statements were properly considered substantive evidence. Consequently, an objection to the jury instructions given or a request for a jury instruction limiting the use of the contested statements

for impeachment purposes only would have been futile. Therefore, Judson cannot establish that defense counsel's performance fell below an objective standard of reasonableness.

Moreover, the trial court's jury instructions were proper. The trial court instructed the jury that it must find that Judson had actually committed the prior acts before it could consider them when deciding if Judson committed the offenses for which he was on trial. The trial court further instructed the jury not to convict Judson solely for those prior acts if it did not find beyond a reasonable doubt that Judson committed the charged offenses. "Jurors are presumed to follow their instructions . . . ." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly, the jury is presumed not to have found Judson guilty solely on the basis of the prior acts of domestic violence.

In addition, other testimony about the charged incident was sufficient to establish Judson's guilt. The complainant testified that Judson hit and choked her. The emergency medical technician (EMT) who attended the scene saw the complainant's cut lip and slight bruising on the complainant's neck. The EMT also noticed that the complainant coughed and cleared her throat repeatedly, symptoms consistent with strangulation. Therefore, Judson has not shown that the alleged ineffective assistance of counsel affected the outcome.

Judson argues that the testimony of the police officers should have been excluded because the probative value of their testimony was outweighed by the danger of unfair prejudice. The use of other-acts evidence is not unfairly prejudicial if it "did not stir such passion as to divert the jury from rational consideration of [the defendant's] guilt or innocence of the charged offenses." *Cameron*, 291 Mich App at 611-612. In this case, the other-acts evidence established Judson's pattern of punching and choking women with whom he had a relationship in response to conflict. In addition, the prosecution appropriately called seven police officers to testify to five incidents of domestic violence against one woman, who was not willing to testify about those incidents herself. Each police officer testified to a different role in responding to those five incidents, so their testimony was not unduly cumulative or prejudicial. Further, the trial court instructed the jury how to consider the other-acts evidence and instructed the jury not to find Judson guilty for his previous behavior alone if it did not find beyond a reasonable doubt that he committed the charged offenses. We conclude that the evidence presented by the prosecution was admissible under MCL 768.27b and MCL 768.27c.

Judson argues that he was prejudiced by the complainant's testimony that Judson was previously incarcerated. Judson faults the prosecutor for this testimony, maintaining that the prosecutor should have instructed the complainant not to mention this fact. "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). In this case, the prosecution did not elicit the complainant's inadvertent remark that Judson was previously incarcerated, nor did the prosecution seek further testimony regarding Judson's previous incarceration. The record does not reflect that the prosecution anticipated this remark in response to the question whether the complainant communicated with Judson when she moved back to Michigan from Georgia. Further, defense counsel made no objection to the statement, did not request that the remark be stricken, and did not ask for a curative instruction. Judson has not shown that this fleeting

remark was prejudicial, particularly when the evidence showed that Judson punched and choked the complainant. In sum, Judson's evidentiary challenges have no merit.

## B. SENTENCING

Judson challenges the scoring of offense variable (OV) 3, OV 4, and OV 9.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013)].

Trial courts should consult and consider the applicable sentencing guidelines range, but they are advisory only. *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017). When calculating the sentencing guidelines range, a trial court may consider all record evidence, including a presentence investigation report. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "A presentence report is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

Judson argues that the trial court improperly assessed 10 points for OV 3 because the complainant did not suffer bodily injury requiring medical treatment. OV 3 applies when a defendant caused physical injury to a victim. MCL 777.33. "Bodily injury requiring medical treatment" merits 10 points. MCL 777.33(1)(d). "Bodily injury not requiring medical treatment" warrants 5 points. MCL 777.33(1)(e). No points should be assessed under OV 3 if there was no physical injury to the victim. MCL 777.33(1)(f). Bodily injury " 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). "The trial court may rely on reasonable inferences arising from the record evidence to support a particular score." *People v Maben*, 313 Mich App 545, 551; 884 NW2d 314 (2015). For example, a description of how the defendant strangled the victim and the effects of that strangling, including redness and soreness, supported an assessment of 10 points for OV 3 even though there was no evidence that the victim went to the hospital. *Id*. at 551-552. Similarly, in this case, the complainant suffered injuries that required medical treatment even though she did not go to the hospital for treatment. The EMT noticed that the complainant had some symptoms consistent with strangulation, but the complainant declined the EMT's offer to go to the hospital in the ambulance. The police officer who arrived on the scene also gave the complainant some suggestions for how she could seek treatment. Although it is not apparent from the record whether the victim sought and obtained medical treatment, it can reasonably be inferred that the complainant suffered injuries that required medical treatment. Therefore, the trial court did not err by assessing 10 points for OV 3.

Judson argues that the trial court erroneously assessed 10 points for OV 4 because the record contains no evidence that the complainant suffered serious psychological injury requiring professional treatment. Judson did not preserve this argument, so we review it for plain error affecting substantial rights. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

OV 4 concerns psychological injury to the victim. MCL 777.34(1). "Serious psychological injury requiring professional treatment" merits 10 points. MCL 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). A "victim's statements about feeling angry, hurt, violated, and frightened support a score of 10 points for OV 4." *People v Wellman*, 320 Mich App 603, 609; 910 NW2d 304 (2017) (quotation marks and citation omitted). For example, victim statements about bad dreams, the trauma of the experience, and feeling unsafe support an assessment of 10 points for OV 4. *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013). In this case, the complainant submitted a victim impact statement in which she expressed shock, fear, shame, and confusion. She further expressed her belief that Judson would harm her if he had the chance, and she asked for help. From these statements, the trial court could reasonably infer that the complainant has suffered serious psychological injury that may require professional treatment. Accordingly, the trial court did not plainly err by assessing 10 point for OV 4.

Judson argues that the trial court erred by assessing 10 points for OV 9 because there is no evidence that more than one victim was placed in danger. OV 9 warrants a score of 10 points when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). The trial court should consider "only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) . . . ." *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008). When Judson and the complainant began arguing, the complainant's infant son and housemate were also in the room. The complainant's housemate took the child out of the room when the argument escalated into a physical altercation. The trial court could reasonably infer that the complainant's housemate responded to imminent danger and that the complainant, her son, and even her housemate were placed in danger of physical injury. Therefore, the trial court did not err by assessing 10 points for OV 9.

Judson contends that trial counsel was ineffective for failing to object to the scoring of OV 4 and OV 9. Judson did not preserve this issue, so we review it for plain error affecting substantial rights. See *Carines*, 460 Mich at 763. Defense counsel is not required to make meritless or futile objections. *Putman*, 309 Mich App at 245. Because Judson's claims of error lack merit, his ineffective assistance of claim also fails.

Judson challenges the reasonableness of the trial court's upward departure, contending that the trial court improperly relied on charges that were dismissed. This Court reviews "for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense." *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). This Court reviews a "sentence that departs from the applicable guidelines range . . . for reasonableness." *Lockridge*, 498 Mich at 392. The trial court must justify an upward departure to facilitate appellate review. *Id*. The "principle of proportionality requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474. Factors to consider when determining the proportionality of an upward departure "include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).

In this case, the trial court justified the upward departure by examining Judson's long criminal history and the gravity of his conduct in this case. Judson has engaged in assaultive behavior against women since 1997 when he was still a juvenile. Judson had been charged for several incidents of domestic violence since 2001. The trial court noted that some of those charges had been dismissed because the complainants refused to cooperate. Contrary to Judson's assertions on appeal, the trial court did not treat Judson as guilty of crimes he never committed. Rather, the trial court's concern arose out of Judson's persistent pattern of violent behavior towards women, his attempts to avoid punishment for that behavior that were sometimes successful, the continued threat Judson posed to women in the community, and his demonstrated indifference to seeking rehabilitation after facing several charges over several years for this behavior. Accordingly, the trial court did not abuse its discretion by determining that the sentencing guidelines regarding prior convictions did not adequately account for this pattern of conduct, justifying an upward departure sentence.

We affirm.

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel